The Chancellor.
The complainant and his brother, William Keeler, were appointed, by tbe Orphans Court of tbe county of Burlington, guardians of the persons and property of the infant children of the complainant. These children were seven in number, and had considerable estate left them by their grandfather’s will. They have all been settled with, and have executed releases discharging their guardians, except Elizabeth, who has intermarried with Decline Ellis, William 1L, and Theodosia, who lias intermarried with William Bunting. William Keeler is dead. He left a will, which has been proved by the defendants, who are the executors. The bill charges, that William Keeler, as guardian, received nine hundred and eighty-five dollars and seventeen cents, and that he never *460 paid over any part of the same. This hill is filed, by the surviving guardian against the executors of the deceased guardian, for an account of the money received by their testator. The bill has been answered, and proofs taken. The fact, that the deceased guardian received some of the money, is not denied by the answer. The proofs abundantly establish the fact. As to the amount, it is not material now to inquire.
There are two points made in the case.
First. It is insisted that Decline Filis and his wife, William Bunting and his wife, and William H. Keeler are necessary parties to this suit.
Second. It is insisted that a bond and mortgage, given by the.complainant to his brother William, in connection with the agreement executed by William to the complainant in reference to the bond and mortgage, constitute a complete defence against the claim set up by this bill.
Upon the first point, I think the defendants are right. The parties, whom it is alleged are improperly omitted, are interested in taking the accounts. The defendants, also, are entitled to have them before the court, in order that the estate of the testator may have a complete discharge. They are entitled now to receive this money. If they were infants, and the complainant, as surviving guardian, had still a right to act for them as such guardian, he might properly act for them in taking the account which he demands by his bill. They are now competent to act for themselves, and no decree should be made by the court to bind them without affording them an opportunity of a hearing. The defendants insist that William, Keeler expended large sums of money in the support, education, and maintenance of Theodosia. This is open for investigation; for all that complainant could recover, under any circumstances, would be the balance, after deducting such expenditures. The decree made in this case ought to be conclusive upon Theodosia and her husband. If so, they have a right to be heard. If Theo *461 dosia was au infant, and unmarried, then the complainant, as her guardian, could act for her, and bind her by his acts. But this relationship no longer exists. These parties could, themselves, maintain a bill against the defendants for the money received by their testator as guardian. This is a test which settles the question. If they have a right of action, they cannot be deprived of it by any suit which the complainant can institute, unless they are parties to it. The bill must be amended before a decree can be made.
As to the defence, which goes to the whole right of the complainant for an account, as my views are not at all adverse to the interest of the parties not before the court, and as it arises upon a question in which the parties who are here are alone interested, there can be no impropriety in my stating the opinion I have formed in regard to it. It may lead to a settlement, and prevent further costs.
On the twenty-seventh day of March, 1851, the complainant gave to William Keeler his bond, conditioned for the payment of $2500, with interest, in one year from the date thereof, secured by a mortgage upon real estate in the county of Burlington. On the same day, William Keeler gave to the complainant an agreement under seal, as follows : “ Whereas JohnB. Keeler hath this dav ext/ ecuted and delivered to me, William Keeler, of the city of Philadelphia and state of Pennsylvania, a bond, or writing obligatory, in the penal sum of $5000 lawful money of the United States current in New Jersey, conditioned for the payment of two thousand five hundred dollars, like lawful money, in one year from the date thereof, with lawful interest of the state of New Jersey from date till paid, and also a deed, or indenture of mortgage, on the farm and mill situated at Cook’s mills, in the township of New Hanover, called and known by the name of the Cook’s mill property, for the purpose of securing the payment of the said sum expressed in the condition of the said bond, with its interest. And whereas *462 the said John B. Keeler and I, the said William Keeler, are guardians of the children of John B. Keeler; and whereas the above mentioned bond, or writing obligatory, and deed, or indenture of mortgage, is given by the said John B. Keeler to me, the said William Keeler, to secure the payment of the money due and to become due to the children of the said John B. Keeler from the estate of their grandfather, Samuel Hartshorne, and which may come to the hands of the said John B. Keeler: now know ye, that I, the said William Keeler, do hereby covenant and agree, to and with the said John B. Keeler, that if he, the said John B. Keeler, shall pay to the said children their share and shares, as they respectively fall due, and obtain from them, and all of them, a release and discharge from all claims respecting such distributive share of the estate of the said 'Samuel Hartshorne, deceased, then the said bond, or writing obligatory, as well as the said deed and indenture of mortgage, be considered as null and void: and in case apart only of the said children shall release and discharge the said John B. Keeler from his liability at the time the said share becomes due as aforesaid, then the said bond, and writing obligatory, and deed, or indenture of mortgage, shall be considered binding until they shall release, as before described. And when all the said children shall have relesed as aforesaid, then the said bond, and writing obligatory, and deed, or indenture of mortgage, is to be given up to the said John B. Keeler.”
It is useless to speculate as to the motives which induced these parties to exchange these papers. The bond and mortgage were evidently nothing more than a mere indemnity to William Keeler against any loss on account of any legal responsibility which rested upon him in consequence of his joint action with his co-guardian. This is the true legal construction of the papers, and they can be regarded in no other light. They cannot, I think, be regarded, as was contended on the argument, as an acknow *463 lodgment on the part of the complainant that he had received all the money, and as conclusive evidence that it was all in his hands. The complainant obligated himself to pay to the wards all the money he received. He was hound to do nothing more. If anything came to the hands of William Keeler, he was bound to account for it. That is all the bill claims. Whatever money William Keeler received, the defendants must account for. If they undertake to show that their testator paid it to the complainant, these papers may help the evidence by which they undertake to show such payment; hut, of themselves, they are no bar to the claim set up by this bill.
The cause must stand over for parties, if the complainant desires to take an order to amend his bill.